# RACINE COUNTY JAIL
## Medical Services Agreement

THIS AGREEMENT is made and entered into as of December 1, 2019, by and between Racine County, a political subdivision of the State of Wisconsin, (hereinafter, the "County"), with offices at Racine County Courthouse, 730 Wisconsin Avenue, Racine, WI 53403-1238, and MEnD Correctional Care, PLLC (hereinafter, the "Provider"), with offices at 1908 Kruchten Court South, Sartell, MN 56377, a company employing correctional healthcare staff, licensed to practice medicine under the laws of the State of Wisconsin.

### Recitals

WHEREAS, the County desires to arrange for healthcare professionals to provide certain health and medical services to the detainees and inmates of the Racine County Jail (hereinafter, the "Jail") located at 717 Wisconsin Avenue, Racine, WI; and

WHEREAS, the Provider desires to contract with the County to provide certain health and medical services to the detainees and inmates of the Jail in accordance with applicable law;

NOW THEREFORE, in consideration of the above recitals and the mutual covenants and agreements set forth below, the parties agree as follows:

## I.  Scope of Services to be Provided by the Provider

For and in consideration of the compensation to be paid to Provider as hereinafter set forth, County hereby engages Provider to provide comprehensive inmate health and medical services within the Jail as set forth in the Request for Proposal and Provider's Proposals, attached hereto as Addenda A & B, and incorporated herein by reference as if set forth in full. The foregoing are the Contract Documents. The Contract Documents, along with this Agreement, form a complete unit and requirements called for by one are as binding as if called for by all. Ambiguity or conflict between the various documents or within a particular document shall be resolved in favor of the better quality of service. In the event Provider fails to meet the minimum staffing requirements set forth herein, Provider will endeavor to provide replacement coverage, and if it is unable to do so, Provider will credit the County for those hours as provided in Section IX.E or the Provider and the Sheriff or the Sheriff's designee may negotiate a mutually agreeable remedy.

A.  Medical Director/Clinical Director: The Provider shall provide a licensed physician in Wisconsin to serve as the Jail's Medical Director, as defined by Wisconsin statute 448.01(5), and a licensed prescribing medical provider in Wisconsin who shall serve as the Jail's Clinical Director, who shall provide general and urgent care to detainees and inmates. Some of these services from the Medical Director may be provided via telemedicine technology.

1

EXHIBIT
4

The Medical Director and Clinical Director shall:

1. Supervise the medical care provided to detainees and inmates;
2. Make appropriate frequency of visits to the Jail to care for inmates as demand warrants, which will be a minimum of every other week for up to 4 hours each visit for the Medical Director, and an average of 40 hours per week for the Clinical Director;
3. Perform medical procedures at the Jail when appropriate;
4. Prescribe medication for detainees and inmates;
5. Assist Jail administrators and Provider's management in budgeting, planning, vendor negotiations, and related presentations when feasible;
6. Assist Jail administrators and Provider's management in the development and review of treatment protocols, policies and procedures;
7. Supervise nursing staff and review medical charts; and
8. Be available (or have another licensed medical provider available) at all times, by phone, to assist nursing staff or answer Jail staff questions regarding the medical needs of inmates;

B. Nursing Services: The Provider shall provide nine full-time nurses, using both Registered Nurses and Licensed Practical Nurses licensed in Wisconsin per Wisconsin chapter 441. (the "Nurses"). The Nurses employed by the Provider will:

1. Provide approximately 360 hours per week of combined routine nursing coverage during weekdays and weekends. This will include nursing coverage twenty-four hours per day;
2. Conduct routine health assessments on all inmates as soon as feasible, but no later than fourteen (14) calendar days after the inmate's arrival at the Jail, unless a health appraisal has been completed by Provider staff within the previous ninety (90) days. A health assessment shall be conducted as soon as reasonably possible after an inmate's admission if urgent medical concerns are identified;
3. Assist Health Technicians in performing all medication delivery passes of each day (with rare exception – see Section I.C below);
4. Conduct appropriate inmate and Jail staff TB screening and routine inmate lab draws, including, but not limited to, finger-stick blood sugar and urine dipstick for pregnancy or infection;
5. Conduct suicide and mental health screening of inmates and refer appropriate inmates to a medical provider or a mental health specialist, or other healthcare facility when necessary;
6. Assist the Administrative Assistant in providing clerical and organization of the clinic space (see Section I.F below);
7. Ensure appropriate inventory of medications and supplies for the Jail;
8. Be available (or have another nurse available) at all times, by phone or in person, to assist Jail staff and answer medical questions regarding the care of inmates;

2

9. Check daily the status of in-custody inmates admitted into a hospital.
10. Provide a daily medical roll-call email to jail supervisory and administrative staff including updates on Intake medical watches, pregnancies, upcoming medical appointments, hospitalized inmates, food and water logs, and high risk inmates.

C. <u>Health Technician Services</u>: The Provider shall provide Health Technicians. These Health Technicians employed by the Provider will:

1. Provide on-site health technician coverage, typically 16 hours per day;
2. Deliver medications at all medication passes each day, except for certain rare instances in which the Jail staff may be requested to assist in coverage;
3. Assist nursing staff with routine tasks including taking vital signs, Mantoux placement and Jail staff vaccinations, glucose monitoring of diabetic patients, changing dressings, and other treatments;
4. Assist with clerical tasks and clinic organization;
5. Help maintain proper inventories of supplies and support medications;
6. Ensure all medications are prescribed by medical practitioners with current licensure through the State of Wisconsin;
7. Ensure all medications are administered by persons approved, trained and certified to do so, and acting under proper delegation and supervision, in the State of Wisconsin;
8. Qualified staff shall order and reorder medications in a timely manner;
9. Assign clinical tasks that fall within the scope of practice as defined by federal, state and local laws, regulations and applicable licensure.

D. <u>Mental Health Services</u>:

1. <u>Mental Health Professionals</u>: The Provider shall furnish 2 full-time licensed mental health professionals in Wisconsin who will be available in person, 80 hours each week to assist medical and Jail staff regarding the needs of inmates for mental health services. This may include additional mental health assessments and non-medication treatment for patients with mental health issues.

2. <u>Prescribing Mental Health Provider</u>: The Provider shall furnish a certified, prescribing mental health provider who will be available as needed for complex mental health assessments and medication management. These services will always be prior-authorized through Jail administration and will be provided at a rate of $175 per hour.

3. <u>Crisis Intervention</u>. Provider will refer inmates to crisis intervention services when indicated. The crisis intervention services will be provided by the Jail staff in concert with Provider staff. Provider will coordinate with the medical and programming services (e.g., chemical dependence) at

3

Case 2:22-cv-00344-PP    Filed 03/05/26    Page 3 of 19    Document 121-4

the Jail so that patient management is appropriately integrated, health needs are met, and the impact of any of these conditions on each other is adequately addressed. Provider will use an integrated and multidisciplinary team (including Jail staff) to develop treatment plans for inmates displaying problematic behavior.

E.     Supervision: The healthcare services provided under this Agreement will be supervised by the Provider's employee who serves as the Medical Director for the Jail under the Medical Services Agreement and by the Provider's administration team.

F.     Administrative Support Services: The Provider shall provide one full-time administrative assistant. This administrative assistant will provide the following services:

1.     Perform clerical work including filing, organizing, scanning healthcare related documents;
2.     Provide a weekly staff schedule to the Jail Administrator including a breakdown of hours for all contracted positions mentioned within the contract.
3.     Provide light cleaning of clinic workspace;
4.     Assist all healthcare staff with administrative documentation and forms;
5.     Assist with pricing and billing for outside medical services; and
6.     Perform other duties as assigned by supervisory staff.

G.     Advanced Training: Provider will provide yearly medical training to jail staff to keep them in compliance with DOC 350. These trainings shall include, but not be limited to, annual training on health care policies and procedures, medications, health screenings at the time of admission, administration or delivery of prescribed medications, two (2) hours of annual suicide prevention and identification of risk factors, and any other medical training necessary to keep jail staff compliant with DOC 350. Training will be scheduled in coordination with Jail staff. Provider will not be obligated to provide more than 48 hours of training annually, including new hires and refresher training. Any training time in excess of 48 hours annually will be billed at a rate of $75 per hour.

H.     Other Services: Provider will assign clinical tasks that fall within the scope of practice as defined by federal, state and local laws, regulations and applicable licensure. Provider's qualified medical staff will provide safety checks as defined by Jail policy for restrained and segregated inmates, which policy will be delivered to Provider in writing. Provider staff will verify that all special management diets are necessary and will notify the jail kitchen. Provider will establish training and protocols for the detoxification management of intoxicated inmates. All Provider orders, including standing orders (if approved), will be in writing and included in the medical records.

4

I.     CQI Meetings:  Provider will review, at the scheduled Continuing Quality Improvement (CQI) meetings with the Jail administration team, the healthcare reports concerning the overall operation of the healthcare services program and the general health of the detainees and inmates of the Jail.  The CQI meetings are held three times annually.  Meetings between Provider health and mental health staff, Jail administration, Jail Supervisors, and Jail classification officers shall be held weekly.  Provider's performance under this agreement, including, but not limited to, its ability to meet staffing levels, will be the subject of such quarterly and weekly meetings.

J.     Health Education, Evaluations, and Emergency Care: Provider will provide health education materials to the Jail for inmate education.  Provider will also provide on-site health evaluations and medical care for detainees and inmates. Additionally, Provider will provide basic physical examinations for potential detainee and inmate workers to ensure they are physically capable of performing assigned work duties.  Furthermore, Provider will provide emergency medical treatment to Jail staff, subcontractors, and visitors who become ill or are injured while in the Jail.  In cases of emergency medical treatment, Provider will stabilize all patients and refer for recommended treatment or care, as needed.

Provider will comply with the Jail's medical grievance procedure that has been preapproved by the Sheriff or designee and delivered to Provider in writing. Provider will respond in writing to all detainee and inmate medical grievances in a timely manner.  A copy of the detainee and inmate medical grievance and Provider's written response will be forwarded to Jail administration.

K.     Cost Pool for Pharmaceuticals and Certain Other Costs:

1.     Cost Pool:  For each twelve-month period during the term of this Agreement, the County will provide a pool of $240,000 (the "Pool"), to be held and used by the Provider as set forth in this Section I.K.  The Pool will be paid to the Provider as follows:  on the first business day of January, April and July in each year, the County will make a Pool payment to the Provider in the amount of $80,000; provided that an initial Pool payment of $100,000 will be made on the first business day of December 2019, for the four-month period of December 2019 to March 2020.  Additional Pool payments may be made as provided in Section I.K.5 below.

2.     Costs Included in Cost Pool:  Except as provided below, the following costs will be paid from the Pool:

(i)     All prescription pharmaceuticals (including, but not limited to, court-ordered medications)
(ii)    All offsite care, including:
        • Hospitalization

5

- Ambulance services
- Dental services: Provider will provide dental triage screenings for inmates in accordance with criteria established by a licensed dentist for the purpose of identifying inmates in need of serious dental services.
- Emergency and non-emergency specialty care

(iii) Laboratory and radiology costs

3. Costs Not Included in Cost Pool: The following costs are included in the compensation to be paid to the Provider under this Agreement, and will not be paid from the Pool: General office supplies, over-the-counter medications for County inmates (which are currently purchased through a commissary program), and medical equipment purchased by Provider but not approved by the Jail administrator for payment by the County.

4. Procurement of Pharmaceuticals and Services: The Provider will procure all medically-indicated pharmaceuticals and arrange for needed offsite healthcare services for the detainees and inmates of the Jail and will pay for such pharmaceuticals and services with funds from the Pool, except as provided below. The Provider will provide documentation to the County on a monthly basis identifying the pharmaceuticals and services purchased with Pool funds, the cost of such pharmaceuticals and services, and the detainee or inmate to whom the pharmaceuticals or services were provided, and disclosing the amount remaining in the Pool at the end of such month.

(i) Inmates Housed for ICE: The Provider will procure all medically-indicated pharmaceuticals and arrange for needed offsite healthcare services for inmates housed for U.S. Immigration and Customs Enforcement ("ICE"), but will not use Pool funds to pay for pharmaceuticals or offsite services for ICE inmates. Prescription medications and offsite services will be billed directly to ICE by the applicable pharmacy or healthcare service vendor, and the County will pay for any prescription medications or services for which ICE refuses to pay.

(ii) Inmates Housed for the Wisconsin DOC: The Provider will procure all medically-indicated pharmaceuticals and arrange for needed offsite healthcare services for inmates housed for the Wisconsin Department of Corrections ("DOC"), but will not use Pool funds to pay for pharmaceuticals or offsite services for DOC inmates. Invoices for such prescription medications and offsite services will be submitted to the County by Provider, and the County will pay Provider for such prescription medications or services. Provider will be responsible for remitting payment to the applicable pharmacy or healthcare service vendor.

6

(iii) <u>Non-County Inmates (other than inmates housed for ICE or DOC)</u>: The Provider will procure all medically-indicated pharmaceuticals and arrange for needed offsite healthcare services for Non-County Inmates (other than inmates housed for ICE or DOC). The Provider will only use cost pool funds to pay for prescribed medications recommended for Non-County Inmates when the responsible authority refuses to pay for such medication, and the Provider determines that the recommended medication is critical to the health and wellbeing of that patient. All other prescription medications and all offsite services for such Non-County Inmates will be billed to the County so the County may seek reimbursement from the responsible authority of the Non-County Inmate. Definition - the term "<u>Non-County Inmates</u>" means all inmates who are covered by a government health program for American Indians; inmates during transport to/from outside facilities; and inmates for which the County receives payment to house in the Jail for other counties, U.S. Marshals, and/or other federal agencies; but does not include inmates housed for ICE or DOC.

5. <u>Costs in Excess of Pool</u>: If and when all Pool funds have been spent, the Provider will notify the County, and the County may either (i) make an additional Pool payment to the Provider, in an amount determined by the County, or (ii) elect to have all invoices for pharmaceuticals and offsite healthcare services submitted to the County by Provider, in which case the County will pay the Provider for such invoices, and Provider will be responsible for remitting payment to the applicable pharmacy or healthcare service vendor.

6. <u>Pool Funds in Excess of Costs</u>: All funds (if any) remaining in the Pool at the end of each calendar year will be rolled over in the Pool for the next year, and the County's required deposit of funds into the Pool for the next year will be reduced by such amount. All funds (if any) remaining in the Pool at the expiration or termination of this Agreement will be returned to the County within thirty (30) days after the expiration or termination date.

The Provider shall provide all healthcare services in accordance with Wisconsin Department of Corrections Rules, Chapter 350, Immigration & Customs Enforcement (ICE) national detention standards, and the United States Marshals Service Prisoner Health Care Standards, USMS Pub. No. 100 (August 1999).

Provider will endeavor to comply with the Prison Rape Elimination Act of 2003 (PREA), applicable PREA standards, and the Jail's policies related to PREA for preventing, detecting, monitoring, investigating, and eradicating any form of sexual abuse within the

7

Jail. Provider acknowledges that, in addition to self-monitoring, the Jail may conduct announced or unannounced monitoring to include on-site monitoring.

Provider staff will operate within the requirements of the Jail's policies and procedures as communicated in writing to Provider staff by the Sheriff and/or Jail administration; provided, however, that if there is any conflict between the Jail's policies and procedures and Provider's policies and procedures, the conflict shall be resolved by mutual agreement of both parties. Such policies and procedures may change from time to time; if so, the Sheriff or Jail administration will promptly notify Provider staff, provide them with a written copy of the policy and/or procedure change, and provide any necessary training to the Provider staff. Upon the Sheriff or Jail administration's request, Provider will assist the Jail in drafting medical policies and procedures.

## II.    Indemnification

A.    Indemnification. The Provider shall indemnify and hold harmless the County and its commissioners, agents, employees and insurers from all claims, actions, lawsuits, damages, judgments or liabilities, including reasonable attorney's fees and other costs of litigation, arising out of the Provider's (including subcontractor) performance, or failure to adequately perform, its obligations under this Agreement, including but not limited to the medical or healthcare services provided by the Provider and its employees and subcontractors under this Agreement. The County shall indemnify and hold harmless the Provider, its officers, employees, agents, medical staff and insurers from any and all claims, actions, lawsuits, damages, judgments or liabilities, including reasonable attorney's fees and other costs of litigation, arising out of the County's performance, or failure to adequately perform, its obligations under this Agreement, including but not limited to the County's operation and maintenance of the Jail, including maintaining safety and security.

B.    Indemnification Procedures. Each party's indemnification obligations will be conditioned on the following: (a) the indemnified party must provide written notice of any claim to the indemnifying party within ten (10) business days after learning of the claim; provided that any failure or delay in providing such written notice will only relieve the indemnifying party of its obligations to the extent its ability to defend such claim is materially prejudiced by such failure or delay; (b) the indemnifying party will not consent to entry of any judgment or admission of any liability of the indemnified party without the prior written approval of the indemnified party; and (c) the indemnified party will cooperate in the defense of any claim as reasonably required by the indemnifying party at the indemnifying party's sole expense. It is acknowledged and agreed that nothing contained herein (i) will be considered a waiver by either party of any remedy or right, in law or equity, all of which are expressly reserved without prejudice; or (ii) prevents the indemnified party from obtaining separate counsel at such party's sole expense. If the indemnifying party accepts complete responsibility for any losses, the indemnifying party may control the defense of the legal proceedings related to

8

such losses, including the selection of counsel. The indemnified party may participate in the defense of the losses, at its own expense.

### III. Insurance

The Provider shall obtain and maintain the following minimum limits of insurance continuously during the term of this Agreement:

A. Workers' compensation insurance that complies with the applicable statutory minimum requirements covering the Provider as an independent contractor and any employees who the Provider employs under this Agreement;

B. Comprehensive general liability insurance with limits of coverage of not less than One Million Five Hundred Thousand Dollars ($1,500,000.00) per occurrence and Three Million Dollars ($3,000,000.00) aggregate, to include bodily injury, property damage, personal injury, and contractual damages.

C. Medical Professional Liability Insurance with limits of coverage of not less than One Million Five Hundred Thousand Dollars ($1,500,000.00) per occurrence and Three Million Dollars ($3,000,000.00) aggregate, including but not limited to coverage for violations of civil rights alleged to have resulted, in whole or in part, from malpractice of the Provider's physician(s) or employee(s). The Provider shall furnish the County with certificates of insurance specifically describing the coverage above, which shall designate the County as an additional named insured (i.e. a "certificate holder").

D. Business Auto Liability with a single limit or combined limits of coverage or excess umbrella automobile liability insurance policy for all vehicles used regularly in the provision of services under this Agreement for an amount of not less than $500,000.00 per accident for property damage, $500,000.00 for bodily injury and/or damage to any one person, and $1,500,000.00 for total bodily injuries and/or damage arising out of a single occurrence.

### IV. Records

The Provider and the County shall maintain the confidentiality of client medical information and comply with all legal restrictions in regard to the disclosure thereof in accordance with the Health Insurance Portability and Accountability Act of 1996 (45 C.F.R. Parts 160 and 164) ("HIPAA"), and Wisconsin Statutes, Chapters 19, 134, and 146. Provided any necessary authorizations are obtained and all legal restrictions are met, the Provider and the County shall make any such records available to appropriate County, state or federal agencies in any criminal or civil litigation where the medical condition of an inmate is at issue.

9

## V. Taxes, Permits and Certification

The Provider shall pay all applicable taxes, including sales and excise taxes, and shall keep current all necessary licenses, permits, and certifications necessary to fulfill the terms and conditions of this Agreement. As a condition precedent to this Agreement, the Medical Director employed by the Provider shall display a state license to practice medicine and provide upon request a certificate to prescribe medication from the U.S. Drug Enforcement Agency.

## VI. Term

The initial term of this Agreement shall be for a period of three years and one month from December 1, 2019 to December 31, 2022. The term of this Agreement shall be automatically renewed at the end of the initial term and the end of the first renewal term for additional terms of one-year each (i.e., two (2) one-year renewal terms, for a potential contract term of five (5) years), unless either party submits written notice of its intention not to renew to the other party at least ninety (90) days prior to the end of the then-existing initial term or renewal term, as applicable, in which event this Agreement will terminate upon the expiration of the then-existing term.

## VII. Termination Rights

A. The County may terminate this Agreement if the Provider is in default under this Agreement and fails to correct such default within thirty (30) days (or such longer period as the County may authorize) after the County gives written notice to the Provider specifying the Provider's default. Such default may include, but is not limited to, the following:

    1. The Provider's failure to provide the services called for by this Agreement within the time specified herein or upon the extension thereof as agreed to by the County.

    2. The Provider's failure to perform or comply with any of the other provisions of this Agreement in accordance with its terms, which failure is not cured within thirty (30) days after receipt of written notice from the County or such longer period as the County may authorize.

B. The Provider may terminate this Agreement if the County is in default under this Agreement and fails to correct such default within thirty (30) days (or such longer period as the Provider may authorize) after the Provider gives written notice to the County specifying the County's default, except that in the case of the failure of the County to make payments pursuant to this Agreement, the cure period shall be ten (10) calendar days after receipt of written notice from the Provider.

10

C. Notwithstanding the above paragraphs, either party may terminate this Agreement, with or without cause, upon ninety (90) days written notice to the other party.

## VIII. Personnel Policies

The Provider and the County agree to comply with the non-discrimination requirements of the Department of Corrections and County personnel policies. The Provider and the County agree to comply with the Federal Civil Rights Act of 1964 and shall not:

A. Discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, mental and/or physical handicap; or

B. Treat any inmate differently from any other inmate with respect to the total range of services the Provider provides or the criteria the Provider uses in determining eligibility for those services on the grounds of race, color, religion, national origin, mental and/or physical handicap.

## IX. Compensation

A. Compensation. The Provider, in consideration for the services to be provided hereunder, shall be compensated in the amount of One Hundred Sixteen Thousand Nine Hundred and Sixteen & 67/100 Dollars ($116,916.67) per month (equating to $1,403,000 annually), which amount shall be paid on or before the 20th day of the month in which the services are provided. Compensation will increase by 2% over the rate then in effect on January 1, 2021 and on each subsequent January 1 during the term of this Agreement, including all annual extensions. The compensation set forth in this Section IX.A is in addition to the amount to be provided by the County at the beginning of each calendar year for the cost pool for pharmaceutical expenses under Section I.K.

B. Invoices. The Provider shall submit an invoice to the County prior to the 5th day of each month for which services are being rendered. Invoices will be due and payable on the date specified in paragraph A. above.

C. Partial Months. The amount to be paid the Provider for a period less than a month shall be determined by multiplying the applicable monthly fee by a fraction, the numerator of which shall be the number of days in the month during which services were actually provided, and the denominator shall be thirty (30).

D. Adjustments for Increases in ADP. Notwithstanding paragraph A, above, both parties acknowledge that a significantly increased average daily inmate population ("ADP") may result in the Provider having to increase nursing hours/staff and/or increase provider or mental health professional days or hours to accommodate such an increased workload. The compensation set forth in this Agreement is based on an average ADP of 740. If an increase in ADP of 10% or

11

more occurs for three consecutive months or more, both sides agree to negotiate in good faith, an increased fee to cover the Provider's additional services required to safely perform healthcare services for such an increased ADP.

E.      Credits to County for Staffing Shortages.

1.      Labor Distribution Report. Provider will provide the County a payroll report (Labor Distribution Report) for each month that shows the total hours worked for each position. Monthly invoices may be discounted for missed shifts as outlined below, commencing with services to be provided in January 2020; no deductions will be made with respect to services provided in December 2019.

2.      Clinical Director. The Clinical Director is scheduled to work 2,080 hours annually. Both parties understand that circumstances may arise where an employee may not be able to work. Provider shall make every attempt to get that shift filled or fill a vacancy in this position should one exist; however, if Provider is unable to do so, the Provider will make deductions from the services invoice when the Clinical Director total hours fall below:

(i)      22-33 hours missed for the month: deduct $1,250
(ii)     34-45 hours missed for the month: deduct $2,500
(iii)    46 or more hours missed for the month: deduct $4,167

However, if a Clinical Director is subject to a background check before commencing work at the Jail, and the County has not completed its background check within 21 days, no deduction will be made for shifts that such Clinical Director would have been able to fill.

3.      Mental Health. The Mental Health Professionals are scheduled to work 4,160 hours annually. Both parties understand that circumstances may arise where an employee may not be able to work. Provider shall make every attempt to get that shift filled or fill a vacancy in this position should one exist; however, if Provider is unable to do so, the Provider will make deductions from the services invoice when the Mental Health Professional's positions total hours fall below:

(i)      44-66 hours missed for the month: deduct $1,650
(ii)     67-90 hours missed for the month: deduct $3,300
(iii)    91 or more hours missed for the month: deduct $5,500

However, if a Mental Health Professional is subject to a background check before commencing work at the Jail, and the County has not completed its background check within 21 days, no deduction will be made for shifts that such Mental Health Professional would have been able to fill.

12





<u>Nursing</u>. Nurses are scheduled to work 1,560 hours per month. Under no circumstances will the Jail be left without a Nurse or higher ranking medical provider on duty, 24 hours a day, and 365 days a year. Both parties understand that circumstances may arise where an employee may not be able to work. Provider shall make every attempt to get that shift filled; however, if Provider is unable to do so, the Provider will make deductions from the services invoice when Nurse total hours fall below:

(i)     205-300 hours missed for the month: deduct $7,500
(ii) 301 ~~307~~-408 hours missed for the month: deduct $15,000
(iii)     409 or more hours missed for the month: deduct $25,000

However, if a Nurse is subject to a background check before commencing work at the Jail, and the County has not completed its background check within 21 days, no deduction will be made for shifts that such Nurse would have been able to fill.

F.     THE COUNTY SHALL ULTIMATELY BE RESPONSIBLE FOR MEDICAL SERVICES AND ANY RELATED COSTS PROVIDED OUTSIDE THE JAIL TO INMATES WHO ARE INCARCERATED IN THE JAIL.

G.     THE PROVIDER SHALL NOT BE RESPONSIBLE FOR PERFORMING, OR FOR ANY COSTS OF, MEDICAL SERVICES PROVIDED TO INMATES WHO ARE INCARCERATED IN THE JAIL BUT RECEIVE SAID MEDICAL SERVICES OUTSIDE THE JAIL.

## X.    Limitations

The Provider will administer the purchase of covered pharmaceuticals and medical services, using the Pool, as provided in Section I.K above. The Provider shall not be responsible for the cost of any prescription pharmaceuticals or medical equipment, including but not limited to:

A.     Ambulance or other transportation services;
B.     Special limited-use equipment;
C.     X-rays, lab services, hospital or outside clinic charges;
D.     Furniture, fixtures, equipment and utilities necessary to operate the medical department at the Jail; and
E.     Any other off-site services provided by a medical provider other than the Provider.

The County recognizes that the acquisition of certain additional equipment may be necessary or desirable to enable the Provider to deliver the standard of care contemplated by this Agreement. The Provider may recommend the acquisition of such equipment, and will use its good faith efforts to identify cost-effective sources for such equipment.

13

The County agrees to use its good faith efforts to acquire such equipment for use in the medical department at the Jail.

## XI. Safeguarding of Patient Information

The use or disclosure by either party of information concerning a recipient of services pursuant to this Agreement for any purpose not directly connected with the administration of the County's or the Provider's responsibility with respect to such purchase of services is prohibited, except upon written consent of the County and the recipient, a responsible parent, or guardian.

## XII. Fiscal Responsibility, Records, Controls, Reports, and Monitoring Procedures

The Provider agrees to maintain books, records, documents and accounting procedures and practices which properly reflect its direct and indirect costs expended in the performance of this Agreement. Said records shall be made available at all reasonable times for inspection, review and audit to the County, state auditor, federal agencies, and other person authorized by the County.

## XIII. Program Records, Controls, Reports, Monitoring Procedures, and Ownership of Records

All patient records, program records, controls, reports, monitoring procedures and any other documentation related to patient care shall be kept separate from the inmate's jail file and remain under the ownership of the Jail and shall be held in strictest confidence in accordance with Wisconsin Statutes, Chapter 146. Access to Patient Records shall be limited to the patient's doctor, the patient (upon a properly made request), and the Jail. Medical record keeping shall be at and under the direction of the Provider, and shall be managed pursuant to applicable medical custom, and state and federal law.

A complete copy of an applicable medical transfer sheet will be available to accompany each detainee and inmate who is transferred from the Jail to another location for off-site services or transferred to another institution.

## XIV. Retention of Records

The Provider agrees to retain all books, records and other documents relative to this Agreement for an eight (8) year period from the end of the year that services were provided or any longer period which may be required to complete any audit and resolve any pending audit findings. The Provider agrees to make these documents available to the County and other persons authorized by the County.

## XV. Subcontracting and Assignment

If the Provider proposes to subcontract the performance of any services contemplated under this Agreement, the Provider shall obtain the prior written consent of the County,

14

which consent will not be unreasonably withheld, delayed or conditioned. The Provider shall be responsible for the performance of any subcontractor, and shall ensure that the subcontractor carries out its responsibilities with reasonable care and quality and in compliance with applicable federal, state and local laws. All terms and conditions of this Agreement will be included in all authorized subcontracts. For each agent and subcontractor, including all medical professionals, practitioners, and nurses performing duties as agents or independent contractors of Provider under this Agreement, Provider will provide to the Jail administration proof that, for each such professional, there is in effect during the period that person is engaged in the performance of this Agreement, a professional liability or medical malpractice insurance policy consistent with Section III.C of this Agreement. This Agreement shall not be assigned by the Provider without the prior written consent of the County, except that the Provider may assign this Agreement in connection with a sale or transfer of all or substantially all of its business, whether by sale of assets, merger, sale or exchange of shares, or similar transaction.

## XVI. Security and Safety

The County understands and agrees that adequate security is necessary for the safety of the Provider's employees, as well as for the security of the County's employees and the inmates. The County agrees to provide security, including on-site escort of inmates, when deemed necessary by Provider, sufficient to allow the Provider and its employees to safely provide the medical services called for hereunder.

## XVII. Entire Agreement

This Agreement contains the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior commitments, understandings, warranties, negotiations, all of which are by the execution hereof rendered null and void. No amendment or modification of this Agreement shall be made or deemed to have been made unless in writing and executed by the parties.

## XVIII. Severability

If any provision of this Agreement, or any portion thereof, is found to be invalid, unlawful, or unenforceable to any extent, such provision will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this Agreement will continue unaffected in full force and effect. The parties will negotiate in good faith an enforceable substitute provision for such invalid provision that most nearly achieves the same intent and economic effect.

## XIX. Independent Contractor

A.  During the term of this Agreement, the Provider shall at all times be acting and performing as an independent contractor and no employees of the Provider are acting as employees of the County for any purpose. Nothing contained in this Agreement shall be construed to create a joint venture, partnership or similar

15

relationship between the parties. No statement contained in this Agreement shall be construed so as to find the Provider's employees to be employees of the County, and the Provider's employees shall not be entitled to any of the rights, privileges, or benefits of employees of the County, including but not limited to, workers' compensation, and health/death benefits.

B. Neither party shall have or exercise any control or direction over the methods by which the other party provides its services under this Agreement. Neither party, nor any of their respective agents nor employees, shall be construed to be the agent, employee, or representative of the other party and each party shall be solely responsible for any liability that may arise as a result of, or in connection with, any act or omission by that party or any of its agents or employees.

C. The Provider shall be responsible for employing the persons who will provide the services hereunder, and shall be responsible for all compensation and benefits payable to such employees with respect to their services under this Agreement. The Provider shall have the right to employ additional or different persons during the term of this Agreement. The Provider will inform the County of any change in regard to Medical Director at least thirty (30) days in advance of such change.

D. The Provider acknowledges and agrees that no withholding or deduction for State or Federal income taxes, FICA, FUTA, or otherwise, will be made from the payments due the Provider and that it is the Provider's sole obligation to comply with the applicable provisions of all Federal and State Tax laws.

E. The Provider shall at all times be free to exercise initiative, judgment and discretion as to how to best perform or provide the services identified herein. The Provider may elect to perform administrative duties off-premises.

F. The Provider shall be responsible for all expenses, professional development training and personal equipment expenses (such as pagers, cell phones, etc.) in providing the services covered under this Agreement. There is no separate reimbursement for expenses of the Provider's employees.

G. Nothing in this Agreement shall limit the Provider in providing medical services to other public or private organizations or persons during the term of this Agreement.

H. The Provider's employees consent to a security/criminal background check. The Provider's employees' authority to enter the Jail (a secure facility) is contingent on this background check. The County retains final approval of Provider's employees in regard to security/criminal background clearance and the right to unilaterally terminate this Agreement in the event of any potential security threats presented by the Provider's employees, and these security issues are not corrected within ten (10) days of receipt of written notice as such from the County.

16

## XX. Notices

Any notice hereunder shall have been deemed to have been given only if in writing and either delivered by hand or sent by first class mail to the addresses listed herein.

## XXI. Experimental Treatment

The Provider shall not provide experimental medical services or treatment to inmates of the Jail.

## XXII. Data Privacy Laws

The Provider agrees to abide by the provisions of Wisconsin Statutes, Chapter 19, and all other applicable state and federal laws, rules, regulations and orders relating to data privacy or confidentiality, and as any of the same may be amended. The Provider agrees to defend, indemnify and hold harmless the County, its commissioners, officials, officers, agents, employees and volunteers for any claims resulting from the Provider's unlawful disclosure and/or use of such protected data. The terms of this paragraph shall survive the cancellation or termination of this Agreement.

## XXIII. Proprietary Information

A. The County agrees that all of the Provider's written protocols and procedures (the "Protocols") are the proprietary information of the Provider and shall be considered "trade secret information." The County will hold all of the Protocols in strict confidence and will not use the Protocols for any purpose other than in connection with the services provided by the Provider under this Agreement, and will not disclose, distribute or provide access to the Protocols to anyone except to the extent necessary under the terms of this Agreement.

B. The provisions of this Article XXIII will not apply to information that the County is required to disclose as a result of any rule, order, decree or subpoena issued by any court or other tribunal of competent jurisdiction or any legislative, administrative, or other governmental body or entity, provided that the following procedures are satisfied. If the County is required to disclose the Protocols or any information relating to the Protocols, it will promptly give written notice to the Provider of such request or requirement and will cooperate with the Provider so that the Provider may seek a protective order or other appropriate remedy to oppose or limit the scope of the requested or required disclosure. If such protective order or other remedy is not obtained, or if the Provider elects not to seek such an order or other remedy, the County will furnish only that portion of the Protocols or information relating to the Protocols that the County is advised by counsel is legally required to be disclosed and will exercise commercially reasonable efforts to obtain (at the Provider's sole cost) reasonable assurance that confidential treatment will be accorded such information.

17

## XXIV. Authority

The persons signing below represent that they have the right and authority to execute this Agreement for their respective entities and no further approvals are necessary to create a binding Agreement.

## XXV. Waiver

Any waiver of the provisions of this Agreement or of a party's rights or remedies under this Agreement must be in writing to be effective. Failure, neglect, or delay by a party to enforce the provisions hereof or its rights or remedies at any time, will not be construed as a waiver of such party's rights or remedies hereunder and will not in any way affect the validity of this Agreement or prejudice such party's right to take subsequent action.

## XXVI. Governing Law; Venue

The Sheriff, the County, and Provider agree that no party will require performance of any Provider or County employee, agent or independent contractor that would violate federal, state and/or local laws, ordinances, rules and/or regulations. This Agreement shall be construed by and in accordance with the laws of the State of Wisconsin, without regard to any applicable conflicts of law principles that might require the application of the laws of any other jurisdiction. Any claim arising under this Agreement shall be prosecuted exclusively in a federal or state court of competent jurisdiction within Racine County, Wisconsin, and each of the parties hereby consents to the jurisdiction of any such court.

[Signature page follows]

Case 2:22-cv-00344-PP    Filed 03/05/26    Page 18 of 19    Document 121-4

IN WITNESS THEREOF, each of the parties has caused this Agreement to be executed on its behalf by its duly authorized representative.

RACINE COUNTY

By: _____

Dated: 12-19-19

By: _____
Wendy M. Christensen
Racine County Clerk
Dated: 12/16/19

Attest:

Attested: _____

Dated: _____

**REVIEWED BY FINANCE DIRECTOR**

Sign _____ 12/11/19
                      Date

MEND CORRECTIONAL CARE, PLLC

By: _____
Todd Leonard, MD CCHP-P, President

Dated: 12-13-19

Date 12-16-19
Certified to be correct as to form

By_____
Racine County Corporation Counsel

19